IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM J. BURFORD,

           Plaintiff,

      vs.

ACCOUNTING PRACTICE SALES, INC.
and GARY L. HOLMES,

           Defendants.

Case No. 3:12-cv-1212-JPG-SCW

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion to dismiss filed by defendants Accounting Practice Sales, Inc. ("APS") and Gary L. Holmes (Doc. 11).  Plaintiff William J. Burford has responded to the motion (Doc. 18).  For the following reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.

**I.**      **Standard for Dismissal**

When considering a Rule 12(b)(6) motion to dismiss, the Court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the non-moving party's] favor."  *Reger Dev., LLC v. National City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must provide "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the claim.  *Bell Atl.*, 550 U.S. at 556.  However, the plaintiff need not "show that [he] would probably prevail."  *Redd v. Nolan*, 663 F.3d 287, 291 (7th Cir. 2011).  "A well-pleaded complaint 'may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'"  *Id*. (quoting *Bell Atl.*, 550

U.S. at 556).

## II.     Facts and Procedural History

The facts of this case, taken from Burford's complaint, and the reasonable inferences that can be drawn from them are as follows.  APS provides marketing and other services related to the brokering of accounting practices.  APS contracts with brokers to work in exclusive territories to obtain listings of accounting practices that are for sale.  APS then lists those accounting practices for sale on its website and encourages brokers to spend time and money marketing these practices to potential buyers.  When an APS broker makes a successful sale, he pays part of the commission to APS.

Burford is a certified public accountant licensed in Illinois.  In or around early 2003, Holmes, APS's sole shareholder and officer, recruited Burford to join APS as a broker.  Burford told Holmes that he did not want to work at building up a territory only to have the territory taken from him at a later date.  Holmes assured Burford this would not happen so long as Burford performed.

Burford entered into a written agreement to begin working for APS on or about March 24, 2003.  This agreement gave Burford the exclusive right to broker accounting practices for APS in the state of Louisiana.  The agreement was for a term of 12 months from the date signed with a renewal for additional 12-month periods on the anniversary of the agreement each year. The agreement also provided that APS could not unilaterally terminate the agreement unless Burford violated it.  APS agents later verbally gave him the additional territories of the states of Alabama, Mississippi, Tennessee and Kentucky.  Although Burford inquired about written agreements for these additional territories, APS and Burford never executed a written agreement.

Burford worked diligently for APS within his territories to obtain listings of practices for sale and to find qualified buyers for those practices.  He spent over $300,000 on marketing to

promote the APS name and its business, and made approximately $183,290 for APS from the practices he sold.

On January 15, 2012, Holmes informed Burford that the agreement was terminated even though the most recent contract did not end until March 24, 2012.  APS refused to provide Burford documentation regarding the reasons for his termination and his marketing expenditures. Additionally, Holmes told Burford that any settlement payment by APS would require that Holmes access his personal retirement savings.

Due to his termination from APS, Burford alleges that he has incurred damages through: (1) loss of future income, (2) damage to his business reputation, and (3) loss of the value of the name, brand recognition and good will generated by Burford for the benefit of APS.  Burford filed his two-count complaint on October 16, 2012, in the Circuit Court for the First Judicial Circuit, Williamson County, Illinois, alleging breach of contract (Count I) and seeking to pierce APS's corporate veil and hold Holmes personally liable (Count II) (Doc. 11).  Defendants removed the case to this Court based on original federal diversity jurisdiction under 18 U.S.C. § 1332(a).  28 U.S.C. § 1441(a).  Thereafter, Defendants filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that both the breach of contract claim and the request to be allowed to pierce APS's corporate veil must be dismissed because they fail to state a claim for which relief can be granted.

## III.   Analysis

The Court will address each of Defendants' arguments in turn.

### A.   Count I – Breach of Contract

Defendants argue in their motion to dismiss that Burford's breach of contract claim must be dismissed because it "pleads empty conclusions that amount to nothing more than threadbare recitals of the elements of a breach of contract claim under Illinois law" (Doc. 11).  Specifically,

Defendants argue that Burford's breach of written contract claim should be dismissed because Burford failed to indicate which provision of the written contract he claimed Defendants violated.  Additionally, Defendants argue that Burford's breach of oral contracts claim should be dismissed because Burford does not allege sufficient facts to indicate specifically what the material terms of the oral contracts were.  Burford argues that the allegations contained in Count I of his complaint are sufficient to withstand Defendants' motion because they are "'a short and plain statement of the claim showing that the pleader is entitled to relief'" as required by Federal Rule of Civil Procedure 8(a)(2) (Doc. 18).

When a federal court has jurisdiction over a case through diversity citizenship of the parties, it must apply "the substantive law of the state in which the district court sits, including choice of law rules."  *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012).  No party disputes that, under Illinois choice of law rules, Illinois law governs the breach of contract claims.

A complaint for breach of contract under Illinois law must allege facts plausibly suggesting the existence of a valid and enforceable contract, the plaintiff's substantial performance under the contract, breach of the contract by the defendant and damages suffered by the plaintiff as a result.  *Kirgan v. FCA, LLC*, 838 F. Supp. 2d 793, 797 (C.D. Ill. 2012) (citing *Reger Dev. v. National City Bank*, 592 F.3d 759, 764 (7th Cir. 2010)).  The material terms of a contract must be definite and certain in order to be enforceable.  *Midland Hotel Corp. v. Reuben H. Donnelley Corp.*, 515 N.E.2d 61, 65 (Ill. 1987).  The Court will first address whether Burford's breach of written contract claim should be dismissed because Burford failed to indicate which provision of the written contract Defendants allegedly violated.  Then it will turn to the oral contracts.

4

      1.     <u>Breach of Written Contract</u>

Burford sufficiently pleads a breach of written contract claim. Burford alleges the existence of a valid and enforceable contract and provides the exact terms of the written agreement. He alleges he substantially performed that contract by successfully working to obtain listings and buyers for accounting practices, by expending over $300,000 on marketing and by earning a significant sum of money for APS. Burford also alleges APS breached the contract by terminating it mid-term without cause. Finally, Burford alleges damages from the loss of future income and commissions from sales, marketing expenditures he made on behalf of APS, damage to Burford's business reputation and the cost of this action. These allegations are more than a mere bare recitation of the elements of the claim for breach of written contract. Rather, Burford's complaint gives Defendants sufficient notice of the nature of the breach of written contract claim and the grounds upon which it rests and pleads facts plausibly suggesting he is entitled to relief for that claim.

      2.     <u>Breach of Oral Contracts</u>

Burford also sufficiently pleads the breach of oral contracts. It is a reasonable inference from the facts Burford pleads in his complaint that the terms of the written contract were extended by oral agreement to cover additional exclusive sales territories. As with the written contract claim, Burford's complaint gives Defendants sufficient notice of the nature of the breach of oral contract claims and the grounds upon which they rest and pleads facts plausibly suggesting he is entitled to relief for those claims.

Now, the Court will address whether Burford's equitable action to pierce the corporate veil must be dismissed.

    B.     <u>Count II – Piercing the Corporate Veil</u>

Defendants argue that Burford's claim to pierce the corporate veil of APS must be

dismissed because it (i) "pleads bare conclusions regarding 'piercing the corporate veil' based on 'fraud'" and (ii) "falls far short of the heightened pleading standards of Fed. R. Civ. P. 9(b)." (Doc. 11).  Burford argues that his pleadings, and the reasonable interferences made therefrom, sufficiently establish fraud and therefore meet the requirements to allow the piercing of APS's corporate veil.

As noted above, a federal court sitting in diversity jurisdiction must apply state substantive law, including choice of law rules.  *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012).  Under Illinois law, the law of a corporation's state of incorporation is applied to veil-piercing claims.  *Retzler v. Pratt & Whitney Co.*, 723 N.E.2d 345, 354 (Ill. App. Ct. 1999).  APS is incorporated in Texas and, as such, Texas law applies.  Under Texas law, a corporation's corporate veil may be pierced under the alter ego theory, that is, where "there is a unity between the corporation and the individual to the extent the corporation's separateness has ceased, and holding only the corporation liable would be unjust."  *Doyle v. Kontemporary Builders, Inc.*, 370 S.W.3d 448, 458 (Tex. App. 2012).  Factors relevant to the alter ego analysis include:

> (1) the payment of alleged corporate debts with personal checks or other commingling of funds; (2) representations that the individual will financially back the corporation; (3) the diversion of company profits to the individual for his personal use; (4) inadequate capitalization; and (5) other failure to keep corporate and personal assets separate.

*Id.*  Contrary to APS's position, allegations to support piercing the corporate veil need not be pled with the specificity required by Federal Rule of Civil Procedure 9(b);  mere notice pleading under Rule 8(a) is sufficient.  *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 912-13 (N.D. Ill. 2007).

Burford alleges that Holmes, the sole shareholder and officer of APS, said he would have to dip into his retirement savings to pay any settlement to Burford on behalf of APS.  While this might suggest APS is undercapitalized, undercapitalization, by itself, is not a sufficient basis to

6

piece the corporate veil. *Endsley Elec., Inc. v. Altech, Inc.*, 378 S.W.3d 15, 24 (Tex. App. 2012). Contrary to the conclusion Burford draws in the complaint, Holmes' statement does not reasonably lead to the inference that Holmes has stripped APS of its capital for his own personal benefit.  In sum, Burford has not alleged a set of facts which, taken together, plausibly suggest Holmes did not respect the separateness of APS.  Nevertheless, the Court believes Burford may be able to plead facts to plausibly suggest he may be entitled to pierce APS's corporate veil. Accordingly, it will dismiss Count II without prejudice and with leave to replead.

## IV.    Conclusion

Accordingly, the Court **GRANTS in part** and **DENIES in part** Defendants' motion to dismiss (Doc. 11).  The Court **DISMISSES** Count II **without prejudice** with leave to replead. Burford shall have up to and including June 3, 2013, to amend his complaint to replead Count II. Burford is directed to consult Local Rule 15.1 regarding amended pleadings and need not seek leave of Court to file such amended pleading.

**IT IS SO ORDERED.**
**DATE: May 10, 2013**

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**