IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

WILLIAM J. BURFORD,

                Plaintiff/Counterdefendant,

    vs.

ACCOUNTING PRACTICE SALES, INC., a
Texas corporation,

                Defendant/Counterclaimant,

    and

GARY L. HOLMES,

                Defendant.

Case No. 12-CV-1212-JPG-SCW

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 35). Plaintiff William J. Burford has filed his response (Doc. 43), and Defendants have filed their reply (Doc. 46). For the following reasons, the Court grants Defendants' motion.

Where federal court jurisdiction is based on diversity of citizenship, federal law governs the procedural issues, while state law applies to the substantive issues. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). The Federal Rules mandate the entry of summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R. Civ. P. 56(a). The Court will look to state substantive law to identify which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* "In determining whether a genuine issue of material fact exists, courts must construe all facts in the light most favorable to the non-moving party and

draw all reasonable and justifiable inferences in favor of that party." *McGuire v. United Parcel Serv.*, 152 F.3d 673, 676 (7th Cir. 1998) (citing *Anderson,* 477 U.S. at 255). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

## FACTS

Construing the evidence in the light most favorable to Plaintiff, the following are the relevant facts. Defendant Gary Holmes formed and is currently the sole shareholder and officer of Defendant Accounting Practice Sales, Inc., a Texas Corporation ("APS"). APS is engaged in marketing accounting practices. APS contracts with brokers and assigns them territories in which to obtain listings for accounting practices that are for sale. APS provides training and sales strategies to these brokers. The brokers then find buyers to purchase the accounting practices. The brokers pay a portion of their commission to APS on the accounting practices sold.

In or about early 2003, Burford conducted an internet search and found APS. Burford then contacted Holmes. Holmes recruited Burford as a broker for APS. Burford and APS entered into an agreement in March of 2003, which gave Burford the exclusive right to broker accounting practices in Louisiana on behalf of APS. The agreement states in relevant part:

> 11) As of the date of this agreement, APS assigns Burford the State of Louisiana as an exclusive sales territory. Provided that Burford meets or exceeds the minimum yearly sales value [sic] for an exclusive territory, APS cannot reassign that territory from Burford to any other APS broker, agent or affiliate….If APS reassigns any territory Burford has had as his territory, APS agreems [sic] that Burford maintains a lien for any commissions

2

>received from sales of accounting practices that Burford has obtained as
>listings in Burford's previously assigned territory and agrees to compensate
>Burford… It is also acknowledged by both parties to this agreement that once
>Burford is working full time that Louisiana might not be enough territory for
>him to handle.  For that reason, APS agrees to consult with Burford before
>assigning any of the following areas to other reps: Southern Illinois,
>Arkansas, Mississippi, Tennessee, Oklahoma, and Missouri.
>
>***
>
>This agreement is effective on the date signed below and continues for a period
>of twelve months. After that time, it renews automatically on each anniversary
>date of this agreement for another period of twelve months.This agreement can
>be terminated by Burford at any time by providing a thirty-day written notice.
>Burford will continue to be bound by the non-competition and confidentiality
>provisions of this agreement for a period of one year. APS cannot terminate this
>agreement unless it is violated by Burford.

(Doc. 23-1, pgs. 2-3).  APS, verbally through APS's agents, later assigned Burford the additional

territories of Alabama, Mississippi, Tennessee, and Kentucky.  While APS and Burford signed

the above quoted written agreement for the state of Louisiana, APS never provided Burford with

a written agreement for the additional four states.

Burford expended funds in furtherance of APS's business and paid commissions to APS

for the accounting practices he sold.  On or about January 15, 2012, Holmes sent Burford an e-

mail notifying Burford that he was terminated from brokering practices in all of his territories.

On October 16, 2012, Burford originally filed this case in state court in Williamson

County, Illinois.  Defendants removed the case based on diversity jurisdiction to the United

States District Court for the Southern District of Illinois.  In Burford's First Amended Complaint,

he asserts two claims: (1) Count One for breach of contract, and (2) Count Two, which is entitled

"In Equity Piercing Corporate Veil Personal Liability of Gary Holmes."(Doc. 30).

In his breach of contract claim, Burford argues that by terminating him, APS violated the

written agreement for Louisiana as well as the oral agreements for the states of Alabama,

Mississippi, Tennessee, and Kentucky.  Burford further argues that because the agreement was effective on March 24, 2003, and renewed for 12 month periods at each anniversary, he could not be terminated on January 15, 2012.  Burford also argues in the alternative that "APS had previously waived the contract provisions upon which it claimed to rely in terminating [him]…." (Doc. 30, pgs. 4-5).  However, Burford fails to explain what provisions he is referring to or how APS has waived those provisions.  In his piercing the corporate veil claim, Burford argues that APS is inadequately capitalized and is a mere alter ego of Holmes.  Burford also argues that Holmes has stripped APS of its capital for his own benefit.  Burford further states that since the filing of this case, Holmes has been diverting income from APS to Accounting Practice Sales II ("APS II").  APS II is another corporation Holmes owns which conducts business similar, if not identical, to APS.

## PLEADINGS

On July 24, 2013, Defendants filed their Motion for Summary Judgment (Doc. 35).  In their motion, Defendants argue that they are entitled to summary judgment on the basis that the written agreement and the oral agreements were for an indefinite duration, and therefore, terminable at will.  Defendants make two alternative arguments, arguing that the oral agreements are unenforceable because they had no durational term at all or that there was no meeting of the minds on material terms within the oral agreements.  Finally, Defendants argue that Burford's "piercing the corporate veil" claim is a remedy and not an independent cause of action, and therefore, must fail if Defendants are granted summary judgment on the breach of contract claim.

On August 26, 2013, Burford filed his Response to Defendants' Motion for Summary Judgment (Doc. 43).  Burford argues that if there was no meeting of the minds, he is still entitled to recover the commissions paid to APS in the absence of a contract.  He also argues that he is

entitled to the expenditures he made to promote APS.  Finally, Burford argues that the written agreement is not terminable at will because APS could only terminate the agreement if Burford violated it.  In Burford's response, he also argues that the Illinois Franchise Disclosure Act (the "IFDA"), *see* 815 ILCS 705/1 et seq., is applicable in this case and that the IFDA prohibits APS, a franchisor, from terminating Burford, the franchisee, without "good cause."  *See* 815 ILCS 705/19.  Therefore, Burford argues, APS violated the IFDA by not renewing his franchise.

On September 9, 2013, Defendants filed their reply (Doc. 46).  Defendants restated their previous argument; i.e., that the agreements were terminable at will.  They also argued that Burford cannot make the franchise argument at this stage in the proceedings, and that even if he were allowed to do so, the contracts do not constitute franchise agreements because Burford never paid a franchise fee as required by the IFDA. *See* 815 ILCS 705/3(1).

In Burford's first amended complaint (Doc. 30), he only referenced franchises in two instances.  First, Plaintiff stated, "APS had recently begun seeking its brokers' consent to a franchise arrangement for the brokers, and Burford was resistant to that plan."  (Doc. 30, pg. 4).  Next, when arguing that APS's corporate veil be disregarded, Plaintiff stated "[b]y making the franchise agreements through APS II instead of APS, Gary Holmes has diverted the business operations, assets, and income of APS to APS II."  A complete reading of Plaintiff's amended complaint suggests that APS had begun to enter into franchise agreements with its brokers and that Burford resisted such an action.  Furthermore, Burford did not allege a claim against Defendants for violating the IFDA.  For these reasons, the Court will not address the Plaintiff's arguments as to the applicability of the IFDA at this time.

There is some disagreement between the parties as to the terms of the oral contracts as well as to how many contracts there are.  In Burford's response to Defendants' first set of

interrogatories, when asked about the agreements for each of the four additional states that were assigned to Burford, he responded that "[t]he terms of Plaintiff's verbal agreement have always been assumed to be identical to the terms of his written agreement for the state of Louisiana." (Doc. 35-7).  Burford made this statement four times in his answers to the interrogatories as to each of the four additional states, respectively.  Burford also stated that "APS has always accepted commissions on Plaintiff's sales as though the terms of the verbal agreement for each of the new states assigned to Burford were identical to the terms of the written agreement for the state of Louisiana." *Id*.  Burford later stated in a deposition that his interrogatory answer might have been incorrect and that his "only understanding [as to the oral agreements] was the split on commissions." (Doc. 35-6).  However, Plaintiff went on to state that "[he] would assume [the oral agreement] would be very close to the original.  It might have even been identical to the original but [he] [did not] know that for sure…." *Id.*

During a deposition, Defendant Holmes stated that he believed that the additional states assigned to Burford comprised one territory.  (Doc. 35-4).  In his response to Defendants' motion for summary judgment, Burford lists this as a "strongly disputed" fact, asserting that each of the five states were separate territories.  (Doc. 43).  In his response, Burford argues that "[a] fair reading of Burford's deposition testimony clearly indicates that he believed there were other terms for the oral agreements, but he did not want to say with absolute certainty that they were identical in all respects to the terms of the written agreement…." *Id.* at 3.  Burford claims that this "illustrates the existence of a factual question as to what precisely the other terms of the oral agreements might be." *Id.* at 3.

 "When interpreting a contract, '[t]he primary objective of the court is to determine and give effect to the intent of the parties as expressed in the language of the [contract].'" *A.T.N.,*

*Inc. v. McAirlaid's Vliesstoffe GmbH & Co. KG*, 557 F.3d 483, 485 (7th Cir. 2009) (quoting *Clayton v. Millers First Ins. Cos.*, 892 N.E.2d 613, 615 (Ill. App. 5th Dist. 2008)).  While the parties may disagree as to the number of territories or contracts in question, it appears that both Burford and Defendants intended and acted as though the written and oral contracts were governed by the same terms.  Therefore, the Court will address the contracts in question under the terms of the written agreement.

## COUNT ONE

The critical issue in this case is whether the agreement between APS and Burford was terminable at will.  When a contract is terminable at will, it may be terminated by either party and for any reason. *Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 589 (7th Cir. 2000) (citing *Kumpf v. Steinhaus*, 779 F.2d 1323, 1326 (7th Cir. 1985)).  A contract may be terminable at will if it is of indefinite duration or if it fails to specify the occurrence of an objective event upon which it may be terminated.

First, the Court will address whether the contract was of an indefinite duration.  "Illinois law generally disfavors perpetual contract." *A.T.N., Inc. v. McAirlaid's Vliesstoffe GmbH & Co. KG*, 557 F.3d 483, 486 (7th Cir. 2009) (citing *Jespersen v. Minn. Mining & Mfg.*, 700 N.E.2d 1014, 1016-1017 (Ill. 1998)).  "[C]ontracts of indefinite duration are generally deemed terminable at will by either party." *A.T.N., Inc.*, 557 F.3d at 486 (citing *Jespersen*, 700 N.E.2d at 1016)).  "[F]or a contract to be of definite duration, '[t]he event upon which [it] will terminate must be an "objective event…"'" independent of the will of the parties." *Profile Prods., LLC v. Soil Mgmt. Techs., Inc.*, 155 F. Supp. 2d 880, 883 (N.D. Ill. 2001) (quoting *R.J.N. Corp. v. Connelly Food Prods.*, 529 N.E.2d 1184, 1187 (Ill. App. 5th Dist. 1988)).  If the "contract is terminable upon the occurrence of some event, neither party may terminate at will." *First*

*Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1012 (citing *Consol. Labs., Inc. v. Shandon Scientific Co.*, 413 F.2d 208, 212 (7th Cir. 1969)).

In the present case, the contract in question is of indefinite duration. The agreement provides that it "is effective on the date signed…and continues for a period of twelve months. After that time, it renews automatically on each anniversary date of this agreement for another period of twelve months." In *Stromsen*, a case cited by Defendants, the United States District Court for the Northern District of Illinois addressed a contract which automatically renewed from year to year. In dicta, the Court noted that a contract "that automatically renews itself effectively has no end." *Stromsen v. Aluma Shield Indus., Inc.*, No. 89 C 5036, 1993 U.S. Dist. WL 34727, at *8 (N.D. Ill. Feb. 8, 1993). The contract in this case renewed itself without Burford or APS having to take any action or having to refrain from taking action. While the contract purports to renew itself for "period[s] of twelve months," the use of these words does nothing. If this wording were removed, the contract would still have the same effect; APS would be eternally locked into the agreement. The contract provided no manner in which the renewal could be stopped. The contract, as it is worded, would continue indefinitely. Therefore, the Court finds that, as to this point, the contract is of indefinite duration.

Next, the Court will address whether, even though the contract lacks a definite period of duration, there is a specific event upon which the contract terminates that makes the contract terminable for cause instead of terminable at will. "[A]n agreement without a fixed duration but which provides that it is terminable only for cause…is in one sense of indefinite duration, but is nonetheless terminable only upon the occurrence of the specified event *and not at will*." *Profile Prods., LLC,* 155 F. Supp. 2d at 883 (N.D. Ill.) (quoting *Jespersen,* 700 N.E.2d at 1016).

In the present case, the contract between APS and Burford provides that it "can be terminated by Burford at any time by providing a thirty-day written notice." "If a party was in 'complete control' or 'could institute a termination-triggering event, then the contract should be considered terminable at will.'" *Profile Prods., LLC,* 155 F. Supp. 2d at 883 (citing *Yale Sec., Inc. v. Freedman Sales, Ltd.*, No. 96 C 6501, 1997 WL 51428, at *3 (N.D. Ill. Feb. 3, 1997) (Coar, J.)). Burford could, at his will, terminate the contract at any time and apparently for any reason as long as he provided a thirty day written notice. Therefore, Burford had "complete control" as to when he could terminate the contract. Accordingly, this does not take the contract out of being one that is terminable at will.

However, the agreement also states that "APS cannot terminate this agreement unless it is violated by Burford." Under this provision, APS may only terminate if Burford breaches. The Illinois Supreme Court, on review of an order granting a motion to dismiss, addressed this very issue in *Jespersen*. *Jespersen v. Minn. Mfg. Co.*, 700 N.E.2d 1014, 1015. In *Jespersen*, the contract provided that the parties could terminate it for instances of material breach. *Id.* The contract also provided that it "'shall continue in force indefinitely' unless terminated in the manner [specified in the agreement]." *Id.* at 1016. The Illinois Supreme Court determined that the contract was of indefinite duration and terminable at will, finding that "the termination events are themselves instances of material breach, and *any* contract is terminable upon the occurrence of a material breach." *Id.*

In his response to Defendants' motion for summary judgment, Burford argues that the present case falls within an exception to *Jespersen*. Burford argues that the agreement between Burford and APS could only be terminated upon the occurrence of a specific, objective event. Burford states that "[w]hether Burford violated the Agreement is clearly an objective issue..."

(Doc. 43, pg. 6).  Burford argues that this case is similar to the facts in *Dawson v. W & H Voortman, Ltd.*, 853 F. Supp. 1038 (N.D. Ill. 1994).  In *Dawson*, on a motion to dismiss, the defendant argued that the contract was terminable at will, because it did not "fix a time for its duration…"  *Id.* at 1042.  However, in *Dawson*, the defendant had issued a policy manual to Dawson which stated that Dawson was to "conduct his business according to the policies and procedures...in this handbook."  *Id.*  The District Court for the Northern District of Illinois found that "the policy manual sets forth what can be analogized to a 'for cause' termination clause." *Id.*

In the present case, APS can *only* terminate the agreement if Burford breaches it.  This is distinct from the facts of *Dawson*.  In this case, there are no "for cause" provisions in the contract.  Burford may terminate at any time he chooses and for any reason.  However, if Burford never breaches the contract, APS has no manner in which to terminate the contract. Illinois case law clearly will not allow such an arrangement.  "[M]aterial breach cannot be the sort of specified event that will support a just cause rather than an at will termination."  *Profile Prods., LLC,* 155 F. Supp. 2d at 883.  "[I]t adds nothing to 'specify' that the contract is terminable for material breach, because '*any* contract is terminable upon the occurrence of a material breach.'"  *Id.* (quoting *Jespersen,* 700 N.E.2d at 1016-1017).

In *Profile Products*, the agreement at issue stated that either party could terminate the agreement "for Just Cause."  *Id.*  The agreement defined "just cause" as material failure or breach…."  *Id.*  The District Court for the Northern District of Illinois found that the agreement was terminable at will.  *Id.* at 884.  The present case is similar to both *Jespersen* and *Profile Products*.  By stating that APS may terminate if Burford violates the agreement, the contract does nothing to avoid being found as a terminable at will contract, because any contract is

10

terminable upon a material breach.  The Court finds that the agreement does not provide a specific, objective event upon which the contract terminates.  Therefore, the contract is terminable at will.

Accordingly, the Court finds that the agreement between Burford and APS is terminable at will and therefore, the Defendants' motion for summary judgment must be granted as to Count One.

COUNT TWO

Finally, the Court will address Plaintiff's Count Two, piercing the corporate veil.  "The doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action but rather is a means of imposing liability on an underlying cause of action, such as a tort or breach of contract."  *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 776 (Ill. App. 2d Dist. 2005) (quoting *Peetoom v. Swanson*, 778 N.E. 2d 291, 295 (Ill. App. 2d Dist. 2002)).  In the present case, Plaintiff's underlying cause of action is his breach of contract claim.  Because this claim fails, Plaintiff's Count Two, piercing the corporate veil, must also fail.

Accordingly, the Court finds that Defendants' motion for summary judgment must be granted as to Count Two.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment (Doc. 35) and **DIRECTS** the Clerk of the Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED:   October 29, 2013**

s/J. Phil Gilbert_____<br>
**J. PHIL GILBERT**<br>
**DISTRICT COURT**