IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM J. BURFORD,<br>         Plaintiff/Counter-defendant,<br><br>vs.<br><br>ACCOUNTING PRACTICE SALES, INC.,<br>         Defendant/Counterclaimant<br>    and<br><br>GARY L. HOLMES,<br>         Defendant. | Case No. 3:12-cv-1212-JPG-SCW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on a motion to award attorney's fees pursuant to 15 U.S.C. § 1117(a) brought by plaintiff/counter-defendant William J. Burford. (Doc. 59). Defendant/counterclaimant Accounting Practice Sales, Inc. ("APS") has responded to the motion. (Doc. 60). For the following reasons, the Court denies Burford's request for attorney's fees.

I.      **Facts and Procedural History**

Initially, Burford filed suit in state court and alleged APS had breached written and oral employment contracts. (Doc. 8-1). APS removed Burford's action to federal court, and subsequently filed a counterclaim. (Doc. 19). While under contract with APS, Burford opened his own practice under a name strikingly similar to APS'—"American Accounting Practice Sales." (Doc. 23).

In their counterclaim, APS alleged that Burford misappropriated APS' trade name, by operating as "American Accounting Practice Sales," in direct violation of the Federal

Trademark (Lanham) Act of 1946, 15 U.S.C. § 1051, *et seq*. *Id*.

After the counterclaims had been filed, Burford moved for summary judgment on APS' Lanham Act claims. (Doc. 45). Before arriving at the merits of the counterclaims, the Court granted APS' motion for summary judgment on Burford's claims. (Doc. 50). The same day, APS moved to voluntarily dismiss their counterclaims against Burford. (Doc. 51). The Court granted APS' request for voluntary dismissal, with prejudice. (Doc. 56 & 57).

Following dismissal, Burford filed a request for attorney's fees pursuant to the fee-shifting section of the Lanham Act in § 1117(a). (Doc. 59). According to Burford, APS' pursuit of the "meritless" Lanham Act claim until the "eve of trial" constituted an abuse of process and was an exceptional circumstance as contemplated by § 1117 (a). *Id.* Particularly, Burford based his request on the fact that: APS' counterclaims were meritless; that the claim was originally filed to harass and intimidate; and APS pursued this claim for reasons unrelated to obtaining a favorable judgment. *Id.* In response, APS denied these allegations and countered that their pursuit of a legal remedy was within the bounds of reasonable advocacy. (Doc. 60). This dispute is now before the Court.

For the reasons stated below, the Court denies Burford's request for attorney's fees.

## II.     Standard for Award of Attorney's Fees

The "American Rule" of civil justice states "each side must bear its own attorney's fees absent a statute or contract provision to the contrary." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 258-259 (1975).

The Lanham Act serves as one statutory exception to the American Rule. The Lanham Act provides the right of recovery for violation of this act by one party or the

2

other. 15 U.S.C. §1117 (a). Specifically, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *Id.* Although Congress has never explicitly defined what is to be considered "exceptional," the Seventh Circuit has tackled this complicated determination. *See Door Sys., Inc. v. Pro-Line Door Sys., Inc.,* 126 F.3d 1028, 1031-32 (7th Cir. 1997); *see also S Indus., Inc. v. Centra 2000, Inc.,* 249 F.3d 625, 627 (7th Cir. 2001); *TE-TA-MA Truth Foundation-Family of URI, Inc. v. The World Church of the Creator*, 392 F.3d 248, 263 (7th Cir. 2004).

Any decision to award attorneys' fees under § 1117(a) of the Lanham Act is "firmly committed to the district court's discretion . . . ." *BASF Corp v. Old World Trading Co., Inc.,* 41 F.3d 1081, 1099 (7th Cir. 1994); *TE-TA-MA,* 392 F.3d at 263("[A] district court has broad discretion under § 1117(a) to fashion an appropriate remedy . . . ."). The rule, according to the Seventh Circuit, instructs trial courts to determine whether the Defendants/counterclaimant's action in filing the suit was "objectively unreasonable." *Nightingale,* 626 F.3d at 965. "Objectively unreasonable" actions, according to the Seventh Circuit, would constitute an abuse of process entitling the prevailing party to attorney's fees. *Id.* at 966. According to the Court, although a meritless claim is not to be the sole determination, it was considered demonstrative of an abuse of process. *Nightingale,* 626 F.3d at 963.

Arriving at their decision, the Seventh Circuit reviewed the initial dismissal of Nightingale's Lanham Act claims in *Nightingale Home Healthcare Inc. v. Anodyne Therapy, LLC*, 589 F.3d 881 (7th Cir. 2009).

Buyer, Nightingale, brought action against seller, Anodyne, alleging that Anodyne's representative told Nightingale that the lamps had been approved by the Food

3

and Drug Administration for the treatment of peripheral neuropathy. *Id.* at 884. After being removed from state court, Nightingale filed an amended complaint adding an additional claim under the Lanham Act. *Id.* at 882-3. The Lanham Act claim was disposed of via summary judgment in favor of Anodyne along with Nightingale's fraud claims. *Id.* at 883.

On appeal, the Court noted that there was nothing in the record that appears to show that Anodyne had misled Nightingale. *Id.* at 886.

The court took issue with Nightingale's actions after discovering the lamps were not an FDA approved method for treatment of peripheral neuropathy. *Id.* at 885. First, as the Court opined, Nightingale had the expected results with its use of the Anodyne's device: it relieved patients' pain. *Id.* The court noted that there was no evidence or suggestion that the new company's replacement was any better; nor did the new device obtain the FDA approval that Anodyne did not have. *Id.*

In the end, the Court could not determine the motive for what precipitated Nightingale's replacement of Anodyne's lamps. *Id*. Thus, the Seventh Circuit affirmed the lower court's judgment in favor of Defendant, Anodyne. *Id.* at 887.

Subsequent to successfully defending against Nightingale's suit, Anodyne made a motion for an award of attorney's fees based on § 1117(a) of the Lanham Act that awards fees to a prevailing party under exceptional circumstances. *Nightingale Home Healthcare, Inc. v. Anodyne Therapy, LLC,* 626 F.3d 958, 960 (7th Cir. 2010). The lower court granted the defendant's request. *Id.*

On appeal, the Seventh Circuit sought to clarify the confusion among the various circuits on what constitutes "exceptional circumstances." *Id.*at 960-62. Upon reviewing

these facts, the Court determined that the case is exceptional under the Lanham Act since the losing party was guilty of abuse of process in initially bringing suit. *Id.* at 963. Judge Posner explained that not only did the Lanham Act claim have no possible merit—although as the court notes this is not the only demonstration of an abuse of process—but the lower court also found that the Plaintiffs initially made the Lanham Act claim solely to coerce a price reduction from the Defendants. *Id.* at 965. Indeed, "Nightingale would have been content to continue buying Anodyne's lamps, as indicated by its purchasing lamps that were subject to the same limited FDA approval and advertising them the same way." *Id.* at 965-66. In the end, the Court determined that "[t]o bring a frivolous claim in order to obtain an advantage unrelated to obtaining a favorable judgment is to commit an abuse of process." *Id.*

With this standard in mind, the Court turns to the request for attorney's fees before it now.

**III. Analysis**

    a. *Burford has failed to show that APS' Lanham Act claim was objectively unreasonable or an abuse of process constituting "exceptional circumstances."*

Burford has failed to show this court that APS' Lanham Act claims were objectively unreasonable as to constitute an abuse of process. Thus, his request for attorney's fees will be denied.

First, Burford argues that APS made their motion for voluntary dismissal because they had a sudden realization there was no way to prevail on their "meritless claims." (Doc. 59). However, Burford's contention is incorrect. More simply, APS waited two weeks before trial, not because this was a strategy to harass or molest Burford, but

because the Court awarded APS' motion for summary judgment on the claims already filed against them. (Doc. 50). After being awarded summary judgment, APS immediately moved to voluntarily dismiss their counterclaims. (Order granting summary judgment (Doc. 50) was entered by the Court on 10/29/2013; motion for dismissal filed by APS was entered 10/29/2013 (Doc. 51)). Objectively, it seems from the record that APS wanted to cease further litigation, and did so with all deliberate speed. Beyond this understanding, this Court is unwilling to engage in an extensive interpretation of APS' motives as was particularly admonished by the Seventh Circuit. *Nightingale*, 626 F.3d at 965.

Next, the record does not support an inference that APS made a frivolous claim to begin with. In support of their counterclaim, APS provided evidence that the name "Accounting Practice Sales" was a descriptive rather than a generic name. (Doc. 47-7); *see Door Sys., Inc. v. Pro-Line Door Sys., Inc.,* 83 F.3d 169, 171 ("[T]he question of genericness is one of linguistic usage, and can be approached by a variety of routes." Such variety includes the dictionary, yellow pages, or advertisements). APS further contended the allegedly descriptive name "Accounting Sales Practice" had begun to denote the goodwill of the business and the high standard of services. (Doc. 27 & 34).Thus, according to APS, this understanding of their name signified a secondary meaning potentially entitling them to trademark protection. *Id.*; *see H-D Michigan, Inc. v. Top Quality Serv., Inc.,* 496 F.3d 755, 759-60 (7th Cir. 2007).

In short, APS sought protection of their alleged trademark from continued misappropriation by "American Accounting Practice Sales" and Burford. (Doc. 19). To do so, APS sought a reasonably legitimate remedy through Lanham Acts claims. *Id.*; *See*

6

*TE-TA-MA*, 392 F.3d 264 ("[T]he bounds of zealous advocacy [are] a far cry . . . from egregious harassment . . . ."). Although the Court never reached the merits of the Lanham Act claim, Burford has failed to sustain his burden of showing the claim was pursued for an objectively unreasonable reason; to harass; or to obtain an advantage unrelated to obtaining a favorable judgment.

In end, Burford has failed to sustain his burden of showing that APS' pursuit of the Lanham Act claim was an objectively unreasonable abuse of process according to the Seventh Circuit. APS sought only to protect their name and the secondary meaning they contend it had acquired. (Doc. 60).

In exercising its discretion, the Court finds Burford's claim of "exceptional circumstances" is without merit as contemplated by § 1117(a) as interpreted by the Seventh Circuit. This Court is unconvinced that Burford is entitled to attorney's fees.

### IV. Conclusion

Accordingly, the Court **DENIES** Plaintiff/counter-defendant's request for award of attorney's fees. (Doc. 59).

**IT IS SO ORDERED**
**Dated: July1, 2014**

                                                   s/J. Phil Gilbert
                                                   **J. Phil Gilbert**
                                                   **District Judge**