IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM J. BURFORD,<br><br>        Plaintiff/Counterdefendant,<br><br>    vs.<br><br>ACCOUNTING PRACTICE SALES, INC., a Texas corporation,<br><br>        Defendant/Counterclaimant,<br><br>    and<br><br>GARY L. HOLMES,<br><br>        Defendant. | Case No. 12-cv-1212-JPG-SCW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff/counter-defendant William J. Burford's motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 61). Defendant/counterclaimant Accounting Practice Sales, Inc. ("APS") and defendant Gary L. Holmes have responded to the motion (Doc. 63), and Burford has replied to that response (Doc. 64). Burford's reply exceeds the five-page limit on reply briefs set forth in Local Rule 7.1(d), so the Court has not considered it.

Under Rule 59(e), a court has the opportunity to consider newly discovered material evidence or intervening changes in the controlling law or to correct its own manifest errors of law or fact to avoid unnecessary appellate procedures. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). It "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been

1

presented to the district court prior to the judgment." *Moro*, 91 F.3d at 876. Rule 59(e) relief is only available if the movant clearly establishes one of the foregoing grounds for relief. *Harrington*, 433 F.3d at 546 (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n. 3 (7th Cir. 2001)).

  Burford asks the Court to reconsider its order granting summary judgment against him on his breach of contract claim against APS and his derivative attempt to pierce the corporate veil to hold Holmes liable for APS's wrongdoing. Burford had contracted with APS, which marketed accounting practices, to serve as a broker to arrange sales of accounting practices to buyers in certain territories. Burford brought this action after APS terminated the contract in the middle of an automatically renewing term. In its summary judgment ruling, the Court found that the contract between Burford and APS was of indefinite duration and did not terminate upon an objective event and that therefore it was terminable at will. *See Jespersen v. Minn. Mining & Mfg.*, 700 N.E.2d 1014, 1016-17 (Ill. 1998); *Profile Prods., LLC v. Soil Mgmt. Techs., Inc.*, 155 F. Supp. 2d 880, 883 (N.D. Ill. 2001). Consequently, APS's mid-term termination was not a breach. The Court declined to consider whether the Illinois Franchise Disclosure Act ("IFDA"), *see* 815 ILCS 705/1 *et seq.*, created a "for cause" termination requirement since Burford had not pled an IFDA claim in the Amended Complaint and had, in fact, pled facts that contradicted a suggestion that a franchise agreement existed – he pled that APS wanted him to sign a franchise agreement but he resisted. The Court further refused to allow Burford to amend his complaint to add an IFDA claim because Burford could have filed such a claim earlier and adding it on the eve of trial would have unduly delayed the resolution of this case.

  Most of the arguments Burford advances in his motion to alter or amend the judgment are ones that he made or should have made in the summary judgment briefing. Thus, they will not

justify Rule 59(e) relief. However, the Court will address two points.

The first is Burford's suggestion that the defendants were delinquent for not pleading as an affirmative defense that the contract was terminable at will. He complains that he deserves an opportunity to respond to that argument. The argument that the contract was terminable at will is not an affirmative defense that needed to be pled in a responsive pleading pursuant to Federal Rule of Civil Procedure 8(c)(1). A defense is an affirmative defense if it can defeat liability even where the plaintiff proves his case. *Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Ill. Nat'l Bank & Trust Co.*, 576 F. Supp. 985, 988 (N.D. 1983). If the defendant bears the burden of proving the defense and the defense does not controvert the plaintiff's case, it is an affirmative defense. *See Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) (citing *Brunswick Leasing Corp. v. Wis. Cent., Ltd.,* 136 F.3d 521, 530 (7th Cir. 1998)).

The argument that the contract was terminable at will would not have allowed APS to escape liability if Burford had proved a breach of the agreement. On the contrary, it would have countered the element of breach which Burford was required to prove to succeed on his breach of contract claim. Thus, it was not an affirmative defense required to be pled under Rule 8(c)(1). Additionally, Burford was not deprived of an opportunity to respond to APS's argument; he was able to respond to it in his response to the defendants' summary judgment motion.

The second of Burford's points the Court addresses now is the applicability of the IFDA. Even if the Court had considered the IFDA in its summary judgment ruling, it would not have made a difference in the outcome of this case. The pleadings and the evidence show that the agreement between Burford was not a franchise agreement. In order to be considered a franchise, "the person granted the right to engage in such business is required to pay to the

franchisor or an affiliate of the franchisor, directly or indirectly, a franchise fee of $500 or more." 815 ILCS 705/3(1)(c).  A franchise fee is "any fee or charge that a franchisee is required to pay directly or indirectly for the right to enter into a business or sell, resell, or distribute goods, services or franchises under an agreement." 815 ILCS 705/3(14).  "A payment alleged to be a franchise fee must fit precisely within the statutory definition." *Vitkauskas v. State Farm Mut. Auto. Ins. Co.* (1987), 509 N.E.2d 1385, 1391 (Ill. App. Ct. 1987).

Here, there was no franchise fee.  The parties and the Court have been a bit imprecise in stating that *Burford* paid *APS* part of his commissions for selling accounting practices.  However, a more precise description of the financial arrangement in the contract is that *APS* agreed to pay *Burford* a commission on his sales, if he had any:  "APS agrees to do the following:  . . . Compensate Burford for sales of accounting practices by paying him . . . a percentage of each commission received by APS. . . ." Agreement at 1-2, ¶ 9.  Under the contract, Burford was obligated to pay *nothing* to APS outright.  Furthermore, to the extent any amounts retained by APS could conceivably be construed as an indirectly paid franchise fee, that amount is not guaranteed to be $500 or more and, indeed, could have amounted to nothing at all had Burford not actually brokered any accounting practice sales.  Additionally, those fees were contingent commissions, not mandatory fees for the right to enter into business using APS's name.  Finally, the agreement as a whole does not evince an intent to enter into a franchisee/franchisor relationship, as Burford has essentially admitted in his pleadings.

For these reasons, the Court **DENIES** Burford's motion to alter or amend the judgment pursuant to Rule 59(e) (Doc. 61).

**IT IS SO ORDERED.**
**DATED:  July 1, 2014**                                               s/J. Phil Gilbert
                                                                **J. PHIL GILBERT**
                                                                **DISTRICT COURT**