IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM J. BURFORD,<br><br>    Plaintiff,<br><br>vs.<br><br>ACCOUNTING PRACTICE SALES, INC., a Texas corporation, and GARY L. HOLMES,<br><br>    Defendants. | Case No. 12-CV-1212-JPG-SCW |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on plaintiff William J. Burford's motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e) or, in the alternative, for a new trial pursuant to Federal Rule of Civil Procedure 59(a)(1)(A) (Doc. 127). Although not set forth in the caption of his motion, Burford also asks the Court for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Defendants Accounting Practice Sales, Inc. ("APS") and Gary L. Holmes have responded to the motion (Doc. 129).

This breach of contract action case arose after APS terminated an agreement with Burford. Under the agreement, Burford was to act as a broker of accounting practices for APS, which is in the business of marketing and facilitating the purchase and sale of accounting practices. Shortly before the contract termination, APS had asked its brokers to enter into franchise agreements, but Burford refused.

Earlier in the case, APS had moved for summary judgment on the grounds that the agreement was terminable at will, but the Court of Appeals for the Seventh Circuit decided otherwise. *See Burford v. Accounting Practice Sales, Inc.*, 786 F.3d 582, 587 (7th Cir. 2015). For the remainder of the case, APS relied solely on the argument that it had cause to terminate

Burford. The case was tried to a jury on October 28 and 29, 2015, which ended with a verdict for APS. Specifically, the jury found that Burford had not achieved his minimum yearly sales volume for 2011 and that APS had not waived its right to terminate the agreement based on that shortcoming. Judgment was entered in favor of the defendants on October 30, 2015. Burford filed this timely motion 28 days later.

**I.     Standards**

Under Rule 59(e), the Court has an opportunity to consider newly discovered material evidence or intervening changes in the controlling law or to correct its own manifest errors of law or fact to avoid unnecessary appellate procedures. *Moro v. Shell Oil Co.*, 91 F.3d 872, 876 (7th Cir. 1996); *see Harrington v. City of Chi.*, 433 F.3d 542, 546 (7th Cir. 2006). Rule 59(e) relief is only available if the movant clearly establishes one of the foregoing grounds for relief. *Harrington*, 433 F.3d at 546 (citing *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 n. 3 (7th Cir. 2001)).

Rule 59(a)(1)(A) allows the Court to grant a new jury trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." This includes where the verdict is against the manifest weight of the evidence or the trial was unfair to the moving party. *Venson v. Alamirano*, 749 F.3d 641, 657 (7th Cir. 2014); *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004). A verdict is against the manifest weight of the evidence only if, viewing the evidence in favor of the non-moving party, no rational jury could have rendered the verdict. *EEOC v. AutoZone, Inc.*, 809 F.3d 916, 919 (7th Cir. 2016).

Rule 50(b) allows the Court to grant judgment notwithstanding a jury verdict if "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). In doing so, the Court construes all the evidence and draws all

reasonable inferences in favor of the party who prevailed at trial, even to the point of disregarding evidence favorable to the losing party that the jury was not required to believe. *May v. Chrysler Group, LLC*, 716 F.3d 963, 971 (7th Cir. 2012). The Court does not make credibility determinations or weigh evidence but instead decides "whether a highly charitable assessment of the evidence supports the jury's verdict or if, instead, the jury was irrational to reach its conclusion." *Id.*

**II.     Analysis**

   A.     "Mend the Hold" Doctrine

The "mend the hold" doctrine prevents a party to a contract from changing its justification for its position after its first position fails and in circumstances that would indicate bad faith. *Harbor Ins. Co. v. Continental Bank Corp.*, 922 F.2d 357, 362-65 (7th Cir. 1990). In *Harbor Insurance*, the Court applied the doctrine where an insurance company had refused to pay a claim. First, the insurer stated that it refused to pay because the behavior of the insured's directors was so egregious that indemnifying them would be against the law. *Id.* at 359. Then, when the insured sought reimbursement for amounts it paid in settlement, the insurer took the position that it would not pay because the insured's directors had done nothing wrong. *Id.* at 360. The Court of Appeals held that the jury should have been informed of the insurer's change in position. *Id.* at 365.

Burford asks the Court to alter or amend the judgment, to enter judgment as a matter of law in his favor, or to grant a new trial on the grounds that APS should not have been allowed to change its theory of defense – that is, to "mend its hold" – in the middle of the case from "at will" employment to termination for cause. Burford wanted to tell the jury of the change in position and argue that it showed APS's bad faith.

3

The defendants argue Burford has waived the right to seek judgment as a matter of law now by failing to seek it before the case was submitted to the jury. They also argue that the "mend the hold" doctrine does not apply and should not have been presented to the jury.

The defendants are correct that the Court cannot grant judgment as a matter of law under Rule 50(b) if Burford did not make a similar motion under Rule 50(a) prior to the jury's verdict. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). He made no such motion, so judgment as a matter of law is not warranted.

As for Burford's request to alter or amend the judgment, as the Court noted earlier in this case, the Seventh Circuit Court of Appeals established the law of the case that Burford's poor performance would constitute good cause for terminating the contract. That defense theory is not inconsistent with the position the defendants took earlier that the contract was "at will"; it is possible that APS would terminate a contract for good cause even if good cause was not absolutely required. Therefore, there was no *change* in the justification for terminating the contract, as Burford alleges. In fact, the defendants asserted both defenses as early as March 2013 in response to an interrogatory in which they stated,

> Defendants state that APS terminated Plaintiff on January 15, 2012 because Plaintiff failed to meet his minimum yearly sales volume, as defined by Paragraph 11 of the Agreement. Even if Plaintiff had met his minimum yearly sales volume under Paragraph 11 of the Agreement, the Agreement was terminable at will.

That the defendants chose to rely only on the "at will" employment theory in their July 2013 summary judgment motion did not waive their poor performance theory and did not reasonably suggest that they were acting in bad faith. The "mend the hold" doctrine simply does not apply. In light of the fact that Burford has pointed to no manifest error of law with respect to application of the "mend the hold" doctrine, the Court will not alter or amend the judgment.

Burford also asks for a new trial because the Court did not allow him to present evidence to the jury that the defendants had changed their theory of defense after the Court of Appeals had rejected their "at will" employment defense.  He believes the jury should have been able to see that the defendants were taking a position contrary to their earlier position about why his termination was justified.

As noted above, the "mend the hold" doctrine does not apply in this case because the defendants did not change their justifications for terminating Burford's contract.  The evidence and argument Burford believes the Court should have allowed would only have confused the jury and introduced irrelevant issues.  As it was, the verdict was not against the manifest weight of the evidence and the trial was not unfair to Burford, so the Court will not order a new trial.

B. Exhibit 13

Federal Rule of Evidence 403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . confusing the issues, misleading the jury. . ., or needlessly presenting cumulative evidence."  When a party complains of an evidentiary decision at trial, the remedy of a new trial, setting aside the verdict, or altering a judgment is not warranted unless justice requires it and a party's substantial rights are affected by the error.  Fed. R. Civ. P. 61; *see EEOC v. Management Hospitality of Racine, Inc.*, 666 F.3d 422, 440 (7th Cir. 2012).  Relief is only warranted if there is a significant chance that the error affected the outcome of the trial.  *Management Hospitality*, 666 F.3d at 440..

Burford argues that the Court's refusal to admit his Exhibit 13, an attachment to an email that contains answers to frequently asked questions about the transition of APS brokers to franchisees, rendered his trial unfair.  He argues the document contained admissions that APS had not enforced its performance requirements in the past, which would have been relevant to his

5

argument that it had waived the right to insist that Burford satisfy those requirements. The Court found the danger of misleading the jury by introducing evidence about franchises outweighed any probative value the document might have in light of the fact that Burford never entered into a franchise agreement. The Court therefore excluded the document under Federal Rule of Evidence 403. It did, however, allow Burford to testify that he was offered a franchise agreement but refused it.

      The defendants argue that any error was harmless because admission of the evidence would not have had a substantial chance of affecting the outcome of the trial. They further argue the statements in Exhibit 13 do not waive the express terms of the agreement and were cumulative of other testimony that APS had not enforced its performance requirements in the past.

      Exclusion under Rule 403 was proper. The danger of misleading the jury or confusing the issues by introducing a document explaining a franchise arrangement that was never consummated substantially outweighed the limited probative value of a couple of statements within the document relating to the waiver defense. Exclusion was further supported by the fact that other evidence from both litigants established that APS had not enforced its performance requirements in the past, the point to be established by Exhibit 13. The facts were not really in dispute; only the inferences to be drawn from them were, and that was left to the jury to decide.

      Furthermore, any error in excluding this evidence was harmless. *See* Fed. R. Civ. P. 61. The jury already knew from testimony that APS had not enforced its performance requirements in the past, so admission of Exhibit 13 would not have provided any new information. Consequently, there is no reasonable chance that, had the jury seen Exhibit 13, it would have had

any effect on its decision. Because Burford's substantial rights were not affected by the exclusion of Exhibit 13, he is not entitled to any relief on this basis.

        C.     <u>Weight of the Evidence Regarding Waiver</u>

Burford argues that the jury's decision that APS did not waive the performance requirements in the agreement was against the manifest weight of the evidence. He asks for a new trial and for judgment as a matter of law. He points to substantial evidence that APS had not enforced its performance requirements against Burford in the past.

The defendants point to the peculiar nature of the agreement with respect to the performance standard: "Provided that Burford meets or exceeds the minimum yearly sales valume [*sic*] for an exclusive territory, APS cannot reassign that territory from Burford to any other APS broker, agent or affiliate." Agreement § 11. They argue this provision means only that APS would not reassign Burford's territory if he met the sales goals but not that it necessarily would reassign his territory if he did not. The defendants argue that in past years APS chose not to terminate Burford's contract for various reasons – wanting to give him a fair chance, making accommodations for a short-term health problem, the bad economy, business-related litigation activities that took up his time – but never intended to relinquish APS's right to do so in the future. They point out there was also testimony that no APS representative ever assured Burford he would not be terminated as long as he spent a certain minimum amount of money on marketing.

The Court instructed the jury about waiver of the right to enforce the performance requirement:

> Waiver is either an express or implied voluntary and intentional relinquishment of a known and existing right. . . . In order for Accounting Practice Sales to have waived its right, you must find by clear and convincing evidence that Accounting

7

>Practice Sales knew of its right, intended to relinquish its right, and unequivocally did so.

Defs.' Prop. Instr. 5 mod.  Neither party disputes that this is an accurate statement of the law.  The Court has reviewed the trial transcript and finds that the evidence is essentially undisputed that APS did not terminate Burford's contract when he failed to meet the performance requirements for several years.  However, there is enough evidence for a reasonable jury to reject the notion that such conduct clearly and convincingly showed that APS intended to relinquish its right to terminate Burford's contract instead of simply to make allowances for what it viewed as special circumstances such as illness or an unusually bad economy.  The jury was free to draw that conclusion, and Burford is not entitled to a new trial because it did.

Burford is not entitled to judgment as a matter of law on this same point because, in addition to the fact that it has no merit, he failed to seek judgment as a matter of law before the case was submitted to the jury.  *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008).

### D.     Damages

Burford argues that in his new trial, he should be allowed to pursue reliance or restitution damages for his breach of contract claim.  The defendants argue this decision is premature in light of the fact that Burford has not been granted a new trial.

Because the jury found for APS and had no occasion to consider damages, any evidentiary or jury instruction error relating to damages was harmless and would not justify a new trial, altering the judgment or entry of judgment as a matter of law.

### E.     Defense Theory

Burford argues the Court incorrectly allowed APS to present the defense of poor performance after failing to plead that defense in its answer.  He notes that Federal Rule of Civil Procedure 8(b)(1)(A) requires an answer to "state in short and plain terms its defenses to each

claim asserted against it." The defendants argue that they have satisfied the pleading requirements for general defenses, as opposed to affirmative defenses. They also note that Burford had notice of this defense from statements in their answers and responses to interrogatories.

The Court finds that the defendants' answer denying that the plaintiff worked diligently on behalf of APS and denying that it terminated the plaintiff in violation of the contract satisfied Rule 8(b)(1)(A), which sets forth the pleading standards for all defenses in an answer whether affirmative or general.[1] The defendants' pleading was sufficient to put Burford on notice that APS was claiming his termination was justified because of his poor performance. Furthermore, the defendants' responses to interrogatories made this theory abundantly clear, and Burford has suffered no prejudice from a lack of a fuller explanation in the defendants' answer. Burford is not entitled to any relief based on any deficient pleading in the defendants' answer.

### III.  Conclusion

Because Burford has failed to show (1) a manifest error of law concerning the trial of this case, (2) a verdict against the manifest weight of the evidence, (3) an unfair trial or (4) an insufficiency of the evidence to support the verdict, the Court **DENIES** Burford's motion in its entirety (Doc. 127).

**IT IS SO ORDERED.**
**DATED: March 21, 2016**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT COURT**

---

[1] The Court notes that the failure to perform under a contract is not an affirmative defense to a breach of contract claim. Instead, the argument can be presented to show a plaintiff has failed to prove his claim, of which performance by the plaintiff is an essential element. *See Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E. 2d 966 (Ill. App. Ct. 2005).